**BASTAS et al.   v.   McCURDY et al.**

No. 28802.

St. Louis Court of Appeals.

Missouri.

March 16, 1954.

50

·William H. ·Wessel, Hermann and Theodore P. Hukriede, Washington, for appellants.

Frank W. Jenny and James A. Cole, Union, for respondents.

HOLMAN, Special Judge.

Action by plaintiffs (respondents), Pete J. and Marie F. Bastas, to recover damages resulting from the removal of a gas tank and gas hot water heater from premises they had purchased from defendants (appellants), Henry S. and Ethel P. McCurdy. Defendants filed a counterclaim seeking to recover the reasonable value of certain items of personal property which they alleged the plaintiffs would not permit them to remove from the farm in question. Upon a trial of the cause the jury returned a verdict for plaintiffs, on their cause of action, in the sum of $650 and also found for them on the counterclaim. From the ensuing judgment defendants have duly appealed to this court.

The defendants were the owners of a farm located about three miles west of New Haven, Missouri. The major portion of the farm, upon which was located a modern brick house, lay on the north side of Highway 100. Directly across the road

was a tract upon which was located a restaurant building and a barn that had been converted into a dance hall. The residence was occupied by defendants and equipped with a gas hot water heater and a small gas space heater. The hot water heater was connected with water and gas pipes but had no other attachment to the building. Gas was also used to operate the refrigerator and cook stove. At first the defendants purchased "bottle gas" in 100 pound drums which were kept in a cabinet attached to the outside of the house. However, in 1947 they purchased a 500 pound gas tank which was placed a short distance from the home. It rested upon two concrete blocks but was not otherwise attached to the ground. Gas was transmitted from the tank into the house by an underground pipe which went through the foundation into the basement and thence up through the floor and connected with the various appliances, all of which were located on the first floor. Mr. McCurdy testified that an underground pipe also ran from this tank to the barn (dance hall) across the road and thus furnished fuel for heating that building. There was nothing to indicate that plaintiffs had any knowledge of the existence of this pipe.

On April 14, 1951, defendants entered into a contract to sell to the plaintiffs substantially all of the farm located north of the highway. Mr. Bastas testified that the residence was represented to the plaintiffs as a modern house with gas heat and gas hot water heater. Under the terms of the contract a deed conveying the premises sold was executed and delivered to plaintiffs on May 14, 1951, but defendants were permitted to retain possession for not more than 90 days thereafter. After 30 days they were required to pay plaintiffs a stipulated rental.

The defendants moved most of their belongings from the premises about July 28 and plaintiffs at that time entered into possession. It is admitted that the defendants removed the gas tank, hot water heater and space heater from the premises but they later returned the space heater to plaintiffs.

In their brief the defendants have not raised any points concerning the counterclaim and therefore the facts relating to it have not been stated.

The contract of sale specified that certain items of personal property and fixtures, among them "electric and gas fixtures", be included in the sale. However, it is not contended that "gas fixtures", as used in the contract signified anything more favorable to the purchasers than the usual legal definition of the term as the case was tried on the theory that plaintiffs, as a condition of recovery, had the burden of proving that these articles had become a part of the real estate.

A fixture is an article of the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land. The term is expressive of the act of annexation and necessarily implies something that has existed apart from realty but which may, by being attached thereto, become a part thereof. Whether an article is a fixture or not depends upon the facts and circumstances of the particular case.

In the case of Matz v. Miami Club Restaurant, Mo.App., 127 S.W.2d 738, 741, this court stated the well established rule that the "elements of a 'fixture' * * * are commonly said to be annexation, adaption, and intent, with the latter ordinarily of paramount importance, at least in the case of controversies between seller and purchaser, * * * where the controlling question is usually that of whether the intention in annexing the article to the realty was to make it a permanent accession to the land." These elements or tests all present questions of fact and are not ordinarily resolvable by law. Goodin v. Elleardsville Hall Assn., 5 Mo.App. 289.

In determining the intention of the person making the annexation the court or jury is not bound by his testimony on this point, nor by his secret or undisclosed

purpose but may decide this issue from his acts and conduct and the surrounding facts and circumstances. Security Stove & Mfg. Co. v. Stevens, 222 Mo.App. 1029, 9 S.W.2d 808. It necessarily follows that there need not be any direct testimony on the question of intent as the jury may make its finding on this issue from a consideration of the facts and circumstances in evidence.

■ The defendants contend that the main instruction, which directed a verdict for plaintiffs, was erroneous because it did not require a finding that defendants in annexing the articles to the realty intended to make them permanent accessions to the land. We have carefully studied this instruction and note that it requires a finding that the articles were installed and connected in the usual manner (annexation) and were· regularly used in the use and occupancy of the home (adaption) but we are unable to discover any requirement that the jury find that defendants intended that these articles become a part of the real estate. The omission of this essential and most important element of plaintiffs' case made the instruction fatally defective and it was reversible error to give the same.

■ Plaintiffs seek to avoid the effect of this error by asserting that when all the instructions are considered as a whole they are sufficient and fairly present the issues. Smith v. Gerhardt, Mo.App., 220 S.W.2d 85. With this we cannot agree. It is true that one of the instructions given at the request of the defendants required a finding that the articles were intended by both parties in the sale to be a permanent accession to the land. That was not the issue. The intention of which we speak is that of the defendants at the time of annexation. Furthermore, even if this instruction was construed to supply the omitted finding, it would not cure the error. Plaintiffs have evidently overlooked the well established rule that error in omitting a necessary element from an instruction directing a verdict for plaintiff cannot be cured by requiring a finding upon the omitted element in other given instructions. Banta v. Union

Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34; Daggs v. Patsos, Mo.App., 260 S.W.2d 794; Scott v. Missouri Ins. Co., Mo.App., 246 S. W.2d 349.

■ Defendants further complain of the admission of improper evidence and the giving of an incorrect instruction on the issue of damages. The petition alleged that the removal of the articles in question greatly damaged and depreciated the value of the real estate. This was a proper allegation as the measure of damages in a case of this kind is the difference between the reasonable market value of the premises immediately before the removal and immediately thereafter. Schaefer v. Frazier-Davis Const. Co., Mo.App., 125 S.W.2d 897. However, if it appears that the damaged realty may be restored to its former condition at a cost which is less than the diminution in value, then such lesser sum is said to be the amount which may be recovered. It should be noted that this restoration rule of recovery may be applied only in cases where the cost of restoration is *less* than the reduction in the market value of the premises as a result of the injury thereto. Curtis .v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158; Thompson v. Granite Bituminous Paving Co., 199 Mo. App. 356, 203 S.W. 496. Over the objection of defendants the plaintiffs were permitted to prove the value of the articles removed. We do not think this was error. While the value of these items is not the measure of damages, this evidence would have a direct bearing upon the cost of restoration and upon the amount of reduction in the value of the premises by reason of the removal of the articles. Conner v. Aalco Moving & Storage Co., Mo.App., 218 S.W.2d 830.

■ Instruction No. 4 told the jury that plaintiffs' damages should be assessed at such sum as would fairly and reasonably compensate them for the removal of said gas tank and water heater and the damages caused thereby, if any. It is obvious that this instruction does not state the correct rule to guide the jury in determining the amount of damages. Upon another

trial it should be rewritten in conformity with the true measure of damages applicable in this case. Since the cause must be reversed upon another ground we need not decide whether this error would require a reversal.

Error clearly appears in Instruction C given at the request of defendants. This is a burden of proof instruction which required plaintiffs to prove the issues *to the satisfaction of the jury*. This phraseology is now considered reversible error. Pulse v. Jones, Mo.Sup., 218 S.W.2d 553. Of course, this question is not before us on this appeal but we consider it prudent to mention the same so that the instruction will not be given in the same language upon another trial.

The judgment should be reversed and the cause remanded for a new trial. It is so ordered.

ANDERSON, P. J., and BENNICK, J., concur.