Francis B. FREEMAN, Jr.,
Plaintiff–Appellant

v.

Mary Ann BARRS, Defendant–
Respondent.

No. 28321.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 8, 2007.

Thomas W. Cline, Gainesville, for appellant.

Raymond M. Gross, Pointer Law Office, P.C., Gainesville, for respondent.

JOHN E. PARRISH, Presiding Judge.

Francis B. Freeman, Jr., (plaintiff) appeals a judgment for Mary Ann Barrs (defendant) in an action plaintiff brought to replevy a cattle scale.[1] This court affirms.

In 2005, defendant purchased a tract of real estate consisting of approximately 4,000 acres from plaintiff for a price of $3,500,000. There were four residences on the property, two barns, and a covered pole barn with open sides. The pole barn houses the cattle scale that was the subject of plaintiff's replevin action and an enclosed veterinarian office.

The contract between the parties was a form contract.[2] Its paragraph 2 states:

**INCLUSIONS, EXCLUSIONS AND EXCEPTIONS.** The Property *includes* any and all rights, privileges and easements appurtenant thereto, together with all existing buildings and improvements and all affixed equipment now located thereon, *if any,* including all mechanical, HVAC, electrical and plumbing systems, fixtures and equipment, fencing and other attached fixtures, trees, bushes, shrubs and plants, feed bunks in the fence, installed fences and gates, propane tanks not under lease, water association rights and telephone rights where applicable, hog and cattle waterers in the fence or permanently installed, grain storage buildings and hog and cattle shades on permanent foundations, auger and conveyor systems. All grain, crops, livestock, hay, silage, and non-affixed personal property on the real estate are reserved by Seller or Seller's tenant....

The quoted text of paragraph 2 is followed by a disclaimer noting that the contract and no prior document or promotional material identifies what is included in the sale. It further "urged" the parties to list on the lines that followed "as 'included' or 'excluded,' any items which may be subject to question." The typed statement in the blanks for items included in the sale states, "See attached list, for complete equipment remaining with property." A list was at-

---

1. A printer is attached to the scale. Plaintiff sought recovery of it as well as the structure that made up the scale. Any reference in this opinion to the scale shall include the printer as part of that device.

2. The form contract consists of ten pages of small type with various boxes to be checked if applicable to the transaction and numerous lines for use in typing information that may be necessary to complete the contract. Regrettably, as is not unusual in form contracts, it is difficult to read and undertakes to address numerous situations that may or may not be applicable to the particular sale for which it was used.

tached to the contract that consisted of 43 items. Six items were marked through and the word "Gone" was written to the right of each of those items. One item, an "'89 FORD F–350 Diesel" appears to have the word "Belzar" printed by hand after its description. The statement "Taxes for 2003 $3,260.93" is handwritten at the bottom of the page. There was no scale identified on the list of items attached to the contract.

The trial court included findings of fact and conclusions of law with its judgment. Findings of fact attributable to the cattle scale include:

The Plaintiff purchased the present scale in June 2001 for Eleven thousand dollars ($11,000). The scale was sold as a portable model. Plaintiff placed the scale in a pole-type barn on a concrete pad poured for the scale, then poured concrete ramps which would allow cattle to enter and exit the scale. Plaintiff further welded iron fence into place to help funnel the cattle through the scale area. The testimony illustrated that the barn was the area where Plaintiff worked his cattle, with the weighing of cattle being only one of the activities that took place in the barn.

Part of the $11,000 purchase price was for a computer printer. The printer was wired into the scale. Plaintiff installed the printer in a small building inside the barn, away from the scale.

Steve McFadden, the president of Sooner Scale, Inc., the maker of the scale, testified that he had designed the present scale. The scale was designed to be portable, and 70% of the scales he sold were installed in the present manner. He further stated that he could move the present scales by cutting away a welded metal fence and lifting the scale with heavy machinery, and [sic] process which he often performs.

McFadden further stated that the removal of the fence would take approximately one hour with use of a cutting torch, and thereafter the scale could be moved within fifteen minutes. . . .

The Defendant called Bruce Quick, the real estate agent who represented both parties in the sale. Quick testified that Plaintiff had originally informed him that only a truck, a mower and the cattle on the ranch were excluded from the sale. Quick informed Defendant of this prior to the sale. Finally, Quick testified that his knowledge of the scale was that the scale was part of the transaction.

Defendant also called Mr. Ray Stone. Stone had been the ranch manager for plaintiff, and is now the ranch manager for defendant. Stone testified that he was present when plaintiff purchased the scale. He testified that plaintiff did not purchase additional items that would have made the scale portable. He stated that the concrete poured in the barn was specifically designed for this scale, and that the ramps for the scale were made after the scale was built. Additionally, he stated that the scale has never been moved since it was originally set in the barn.

The trial court concluded that the contract was susceptible of more than one meaning; that, therefore, the trial court's duty was "to determine the intent of the parties." It found that plaintiff was bound by the real estate agent's representation to defendant regarding which items were included in the sale and which were not. The trial court held "that ownership of the cattle scale did in fact pass to Defendant as a result of the real estate transaction." The trial court further held, "The parties presented the Court with a plethora of evidence as to whether the cattle scale was a 'fixture'. As the Court holds that the

contract was ambiguous as to this issue, the Court does not rule on the scale's status in this regard." The trial court then stated displeasure with the form contract that was used because it referred to fixtures although "Missouri case law is not clear on what is or is not a 'fixture.'"

Judgment was entered for defendant on plaintiff's replevin claim. The trial court also awarded plaintiff sanctions by granting judgment against defendant in the amount of $750 for initiating and pursuing certain counterclaims which defendant ultimately dismissed, observing that the "claims were not colorable, and the Defendant failed to timely dismiss those claims." It concluded that plaintiff had to defend against knowingly false claims. Defendant does not appeal that determination.

Plaintiff presents one point on appeal. He contends the trial court erred in granting judgment to defendant because the trial court's determination that defendant acquired the scale as part of the real estate transaction "was against the weight of the evidence and erroneously applied the law in that the underlying real estate sales contract was clear and unambiguous and excluded the conveyance of the Sooner portable cattle scale to [defendant] and the Court's determination was based upon the admission of parole evidence to vary and change the terms of the contract."

Defendant contends that plaintiff's claim that the scale was personal property and that the contract unambiguously provided that he keep the scale is not valid. She argues that the scale was affixed to the real estate and, thus, was a fixture; that, as such, the scale was part of the real estate. Defendant asserts that "the separate issue of interpreting the parties' contract-with or without parole evidence," need not be addressed.

■■■■ As defendant suggests, the trial court having tried this case without a jury, the judgment may be affirmed on a theory other than that espoused by the trial court.

When reviewing a bench-tried case, the appellate court's primary concern is the correctness of the trial-court's result, not the route taken to reach it. *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo.App. S.D.1990). Regardless of whether the trial court's proffered reasons are wrong or insufficient, if the correct result was reached, the appellate court must affirm. *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo.App. E.D.1992).

*City of Kansas City v. New York–Kansas Bldg. Associates, L.P.*, 96 S.W.3d 846, 853 (Mo.App.2002). *See also Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo.banc 1999).

■■■■ Paragraph 2 of the real estate contract between the parties unambiguously provides that the sale included all affixed equipment located on the property. Courts do not rewrite unambiguous contracts but construe them as written. *Stephens v. Brekke*, 977 S.W.2d 87, 94 (Mo.App.1998). Thus, as defendant suggests, if the scale constitutes a fixture, the judgment will be affirmed.

A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land. *Bastas [v. McCurdy*, 266 S.W.2d 49] at 51 [(Mo.App.1954)]. The test for determining whether property has become a fixture is three-fold, consisting of: 1) the annexation to the realty; 2) the adaptation to the use to which the realty is devoted; and 3) the intent that the object become a permanent accession to the land. *Id; Hoffman Management Corp. v. S.L.C. of North America, Inc.*, 800 S.W.2d 755, 759 (Mo.App.1990).

These elements or tests all present questions of fact and are not ordinarily resolvable by law. *Bastas,* 266 S.W.2d at 51. Whether or not an article is a fixture depends upon the facts and circumstances of a particular case. *Id.*

*Rothermich v. Union Planters Nat. Bank,* 10 S.W.3d 610, 614 (Mo.App.2000). A court may decide the issue of the intent of the person making the annexation from his acts and conduct and the surrounding facts and circumstances. *Bastas v. McCurdy, supra,* at 51–52. It is not bound by the person's testimony on this point. *Id.* at 51.

 *Sears, Roebuck & Co. v. Seven Palms Motor Inn, Inc.,* 530 S.W.2d 695 (Mo.banc 1975), explains:

> Characterization of an item as a fixture, something otherwise personal but attached to realty under such circumstances as to become part of it, depends upon the finding of three elements: annexation to the realty, adaptation to the use to which the realty is devoted, and intent of the annexor that the object become a permanent accession to the freehold. Missouri cases are uniform in requiring each of these elements to be present in some degree, however slight, before an item may be considered a fixture.

*Id.* at 696–97. The latter two elements, adaptation and intent, are more important in determining whether a chattel became a fixture than the method by which the chattel is affixed to a freehold. *Id.* at 697, *citing Crane Co. v. Epworth Hotel Construction & Real Estate Co.,* 121 Mo.App. 209, 98 S.W. 795, 797 (1906). Annexation that may be slight and easily displaced does not prevent an article from becoming a fixture when the other elements are found. *Id.*

*Annexation.* Plaintiff purchased the scale and printer in 2001. The scale was purchased by plaintiff to "start selling cattle from the ranch and not sending them to the sale barn to keep the price up a little." It was placed in a roofed structure that housed cattle-working pens and a small veterinary office. The scale weighs approximately 6,500 pounds. A fence and gates within the structure had to be cut off in order to install the scale. A concrete slab was poured in the structure for placement of the scale. The size and shape of the slab were designed to accommodate the scale. Metal cleats were welded to the bottom of the scale before it was placed on the slab. The scale was placed on pipes on the ground and pushed with a tractor across the pipes onto the slab. Concrete ramps were installed on two sides of the scale and fencing was constructed to direct cattle onto the scale. The concrete construction (other than the slab) and the metal pipe fencing were completed after the scale was placed on the slab in the pole barn. The metal posts for the fence were set in the concrete. The scale has remained in place since its installation.

*Adaptation.* Ray Stone had been ranch manager for plaintiff. At the time of trial he had an agreement with defendant that permitted him to run cattle on the property. He was running 200 head of cows and 90 calves on the property. He "just kind of [saw] after the place" for her. He told the court that the scale was integral to a cattle-working facility. The scale was used to weigh cattle for sale and to determine required dosages of medicine administered to cattle.

*Intent.* The scale was described as portable by its manufacturer. The manufacturer sold peripheral items that permitted the scale to be moved. This included a trailer and an inverter. Plaintiff did not buy that equipment. Ray Stone told the court that the scale was purchased "to be stationary whether it was portable or not."

This court concludes that the scale was a fixture; that, therefore, the sale of the real estate on which it was situate included the sale of the scale. A 6,500–pound scale placed on a specially sized concrete pad and surrounded by metal pole fencing set in the concrete is annexed to the real estate on which the concrete pad is poured. The permanency of the installation is emphasized by the fact the facility is covered and has a veterinary office in which the printer for the scale may be operated. The scale was put in place to facilitate the cattle operation on the premises. It had been used for that purpose since its purchase. Its adaptation for that purpose enhanced the operation of the cattle ranch.

Mindful that "[i]n determining the intention of the person making the annexation the court ... is not bound by [that person's] testimony on this point, nor by his secret or undisclosed purpose but may decide this issue from his acts and conduct and the surrounding facts and circumstances," *Bastas v. McCurdy,* 266 S.W.2d at 51–52, this court holds that the evidence in this case demonstrates that it was plaintiff's intent for the scale to be a permanent installation; that the scale is a fixture and, therefore, part of the real estate. The trial court's finding for defendant on plaintiff's claim for replevin was the correct result for the reasons heretofore stated. Plaintiff's point is denied. The judgment is affirmed.

BATES and SCOTT, JJ., concur.