**FLYNN v. WOODS.**

No. 13923.

United States Court of Appeals
Eighth Circuit.

May 11, 1950.

David K. Breed and James R. Anderson, St. Louis, Mo., for appellant.

Cecil H. Lichliter, Special Litigation Attorney, Office of the Housing Expediter, Washington, D. C., (Ed Dupree, General Counsel, A. M. Edwards, Jr., Acting Assistant General Counsel, and Benjamin Freidson, Special Litigation Attorney, Washington, D. C., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The Housing Expediter brought this action under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., to enjoin appellant from charging his tenants more than the alleged allowable maximum rents for housing accommodations, to require restitution of alleged overcharges, and to enjoin appellant from proceeding with actions for eviction against his tenants. The judgment in the District Court was in favor of the Expediter, and the landlord has appealed.

The facts are undisputed. The housing accommodations in question are located in St. Louis. Originally controlled housing accommodations, the premises were a single flat of five rooms and bath which the landlord rented as a single dwelling unit for the approved rent of $27 a month. The rooms were arranged one behind another from the street front to the rear of the flat, with a hall or corridor along one side of the rooms and the bathroom in the rear end of the hall.

In September 1947 alterations were made to convert the flat into two units or apartments, the apartment at the rear of the flat containing a living room, bedroom, and the original kitchen, and the other or front apartment containing a combination bedroom and living room and a kitchen, each apartment having access to the original bath by way of the corridor. This arrangement was accomplished in the following manner. The doorway between the second and third rooms of the flat, as originally constructed, was torn out and replaced by a solid permanent wall. An archway in the rear of the hall which extended along one side of the flat from the front entrance to the bathroom was replaced by a partition wall with a door to serve as an entrance to the rear apartment. The second room of the two-room apartment was converted into a kitchen by installing a kitchen sink, necessary plumbing lines, and an outlet for gas for a kitchen range. The plumbing work necessary to the installation of the kitchen sink involved running a vent pipe from the basement of the building, extending through the first and second floors to and above the roof. This pipe was placed within the partition between the front and rear apartments. Two separate gas water heaters with connections to each apartment and joint connections to the bathroom were installed in the basement, so that each of the two apartments had its own heater and separate meter. Both heaters were connected with the bathroom fixtures. On the completion of this work the former five-room flat was converted into two apartments, each with an entrance from the hall.

Following the completion of this work, the newly-arranged apartments were rented to different tenants, appellant filing a report of decontrol with the local Rent Director, claiming that by reason of the changes made in the original five-room flat a conversion resulting in additional housing accommodations had been effected, and that the two newly-arranged apartments were exempt from rent control under the provisions of section 202(c)(3)(A) and the applicable Controlled Housing Rent Regulations. The Rent Director denied appellant's application for decontrol, and issued orders establishing maximum rentals for the two apartments at $11 a month for the front two rooms and $19 a month for the rear three rooms. Appellant had rented the apartments for rentals of $15 a week for the rear unit and $10 a week for the front unit. After the order of the Rent Director fixing maximum rents the tenants declined to pay more. The appellant brought actions of eviction against them.

On the facts stated, the court concluded as a matter of law that: "The repairs, remodeling and alterations as set out in the Findings of Fact herein, were not such as to constitute additional housing accommodations created by conversion on or after February 1, 1947, and did not constitute a structural change in a residential unit, or units involving substantial alterations, or remodeling and resulting in the creation of additional housing accommodations within the meaning of the Act and Regulations."

By section 202(b) of the Housing and Rent Act of 1947, the term "'housing accommodations' means any building, structure, or part thereof, or land appurtenant

thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) * * *."

Section 202(c) of the Act is as follows:

"The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—

*     *     *     *     *     *

"(3) any housing accommodations * * * which are additional housing accommodations created by conversion on or after February 1, 1947."

The applicable Controlled Housing Rent Regulation, 12 F.R. 4331, after setting forth the definition of controlled housing accommodations in the language of the Act, provides that: "For the purposes of this paragraph (8) the word 'conversion' means * * * (2) a structural change in a residential unit or units involving substantial alterations or remodeling and resulting in the creation of additional housing accommodations."

▮ We are unable to agree with the conclusion reached by the trial court. Obviously, within the meaning of the Housing and Rent Act and the applicable regulation, the mere division of one housing accommodation by makeshift or temporary means could not be said to constitute either substantial or structural alteration of the original housing unit "resulting in the creation of additional housing accommodations." And this would be true even though the means adopted for alteration made it possible to put two tenants into possession of premises previously occupied by one. We cannot suppose that the Congress intended to authorize decontrol by subterfuge.

▮ On the other hand, the question whether additional housing accommodations have been created can not be made to depend entirely upon the extent or cost of the structural work done. Whether additional housing accommodations have been created by conversion must depend upon the facts in each particular case. That, in the circumstances here, the premises converted were so arranged that conversion into additional housing accommodations required less extensive permanent and structural change than might be necessary in another, or even in the usual, situation is not decisive of the right to decontrol. In the present case the conversion was accomplished by tearing out a door and frame in residential property and replacing them with a solid permanent wall, and by the construction of a permanent partition wall with entrance door and frame to replace what had been an open archway, with the addition of the plumbing work necessary to serve two separate housing accommodations where one had existed before. The alteration of the original premises was accomplished by substantial structural alteration within the meaning of the Act and the applicable regulation. Additional housing accommodations were in fact created.

The judgment of the District Court is reversed with directions to dismiss the action.