**FLOTO v. WOODS.**

**No. 14831.**

United States Court of Appeals
Eighth Circuit.

Oct. 29, 1953.

Rehearing Denied Nov. 20, 1953.

Thomas M. Sullivan, Kansas City, Mo. (Harry A. Morris, Kansas City, Mo., on the brief), for appellant.

Nathan Siegel, Asst. Gen. Counsel, Office of Rent Stabilization, Washington, D. C. (Robert A. Sauer, Acting Gen. Counsel, and Isadore A. Honig, Sp. Litigation Atty., Office of Rent Stabilization, Washington, D. C., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

In a complaint filed in the district court in 1949 Tighe E. Woods, Housing Expediter, Office of the Housing Expediter, charged Charles Floto, doing business as Floto Realty Company, and others, with violation of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix § 1896(b), in that he had collected from Calvin Johnson, a tenant in an apartment house in Kansas City, Missouri, the sum of $170 as a bonus over and above the maximum legal rent. The complaint also charged that he had collected a bonus of $150 from Mr. and Mrs. J. T. Hanger, tenants in an apartment house in Kansas City.

Floto admitted the jurisdiction of the court and denied the other allegations of the complaint.

The case was tried to the court and the court found "that Charles Floto wilfully collected from Calvin B. Johnson the sum of $150.00, and from James T. Hanger the sum of $140.00 in addition to the finder's fee which had been agreed upon between Charles Floto and the said Calvin B. Johnson and said James T. Hanger; that the respective sums of $150.00 and $140.00 were collected from said persons as a bonus to be paid in addition to the maximum legal rent of the apartments or premises which had been obtained for them by Charles Floto and it is now the opinion of the Court, after having further considered the matter, that under the authority of Section 206 of the Housing and Rent Act of 1947, as amended, and Section 202 of said Act, that the amount collected by the Defendant, Charles Floto, as aforesaid, brings him within the definition of the Act and renders him liable therefor, for a refund thereof."

Judgment was accordingly entered requiring the defendant Charles Floto to pay to the plaintiff $150 for the use and benefit of the tenant Johnson and $140 for the tenant Hanger and double statutory damages in the amount of $580 for the United States Treasury as liquidated damages; and the defendant appeals.

The appellant contends that under the evidence

1. That "appellant was at best a conduit of the money and not such a recipient as to be liable under the act"; and

2. The evidence was conclusive that the position of the appellant was that of agent of the appellee's witnesses.

■■ In determining these contentions the rule, of course, since the court found the issues against the appellant, is that his findings are presumptively correct and they cannot be set aside unless found to be clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. If, when the evidence is viewed in a light most favorable to the prevailing party, the judgment is sustained by substantial evidence and is not clearly against the weight of the evidence, the judgment must be sustained. Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504, 506.

The evidence introduced was that of the two tenants, Calvin Johnson and James Thomas Hanger. The appellant introduced no evidence.

At all times referred to in the record the appellant Charles Floto was engaged in the real estate business in Kansas City, Missouri, and Ruth Alexander was the owner of an apartment building located on Wabash Avenue in that city.

Calvin Johnson, a witness called by the plaintiff, testified that he rented Apartment 1, 3754 Wabash, from Ruth Alexander through her agent Charles Floto; that Floto told him there was a vacancy at this apartment but that the only way he could get it was to give $150 extra for a ten month lease above the stated price of the apartment, which was $35 a month; that he paid to Mr. Floto in his office $20 for finding the apartment for him, $35 for the first month's rent, and the sum of $150, which latter sum was supposedly to go to Mrs. Alexander. When he paid these sums to Floto in his office he signed the lease which was delivered to him by Mr. Floto after it had been signed by Mrs. Alexander. He never had any dealings with Mrs. Alexander whatsoever. He was told by Mr. Floto that the $150 was for Mrs. Alexander. He lived in the apartment about a year, but he never talked with Mrs. Alexander about the $150 payment.

The other tenant, James Thomas Hanger testifying for the plaintiff, said that he paid Mr. Floto $10 when he registered at his office and then five per cent of two-thirds of a year's rent, which would be $20 for his services in finding an apartment for him. He rented an apartment from Mrs. Ruth Alexander at 3748 Wabash through Mr. Floto; that he paid him $400 cash for an eight month lease, although the lease called for only $260. He never dealt with Mrs. Alexander. He did not know what Mr. Floto did with the difference between the

$400 paid to him and the $260 rental specified in the lease. It was his impression that Floto was working for him all the time, that Floto was his agent.

Since neither Mr. Floto nor Mrs. Alexander testified, the record does not disclose whether Floto kept the bonus of $150 paid by Johnson and the $140 paid by Hanger or turned it over to Mrs. Alexander. In fact the record does not disclose that Mrs. Alexander ever knew that appellant collected the bonus payments involved here.

 In support of his contention that under the evidence he "was at best a conduit of the money and not such a recipient as to be liable under the act" appellant cites Lutz v. Bender, 340 Ill. App. 120, 91 N.E.2d 459; Woods v. William A. White & Sons, 2 Cir., 172 F.2d 356; and Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., 64 Stat. 255. We have examined these authorities, and we do not think they support appellant's contentions under the evidence in this case. Here the bonus payments were made to the appellant directly in cash. Neither he nor the landlord testified that he ever at any time delivered the payments to her and that he did not retain them personally. Section 206(a) of the Act provides:

"That it shall be unlawful for any person to demand, accept, or receive, any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed * * *."

Section 205 of the Act, as amended in 1949, provides: "Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment * * * Provided, That if the person from whom such payment is demanded * * * either fails to institute an action * * * or is not entitled for any reason to bring the action, the United States may institute such action within such one-year period." 50 U.S.C.A.Appendix, § 1895.

 As pointed out by the late Judge Riddick, speaking for this court in Aarons v. United States, 8 Cir., 200 F.2d 828, 830: "The courts have uniformly held that these enforcement provisions of the Act 'are not conditioned upon a finding of the relation of landlord and tenant.'" Citing Forat v. Rauer, 2 Cir., 192 F.2d 861, 862; Co-Efficient Foundation v. Woods, 5 Cir., 171 F.2d 691, 696, wherein the court said: "Moreover, the question is not one of title to the property but is a question of who charged and collected overcharges in rentals."

And § 202(e) provides that "The term 'rent' means the consideration, including any bonus, benefit, or gratuity demanded or received for or in connection with the use or occupancy of housing accommodations, * * *."

The court's finding of facts are conclusive upon the issues here.

Affirmed.